Robert Tauler (SBN 241964)
robert@taulersmith.com
Camrie Ventry (SBN 355853)
cventry@taulersmith.com
TAULER SMITH LLP
626 Wilshire Boulevard, Suite 550
Los Angeles, California 90017
Tel: (213) 927-9270

*Attorneys for Plaintiff*
*Jane Heiting*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE HEITING, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TRELLA HEALTH LLC, a Georgia limited liability company; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**1. VIOLATIONS OF THE CALIFORNIA TRAP AND TRACE LAW (CAL. PENAL CODE § 638.51)** |

CLASS ACTION COMPLAINT

**INTRODUCTION**

1. Defendant Trella Health LLC ("Defendant" or "Trella Health") uses data broker software on its website – www.trellahealth.com (the "Website") – to secretly collect data about a Website visitor's computer, location, and browsing habits. The data broker software then compiles this data and correlates that data with extensive external records it already has about most Californians in order to learn the identity of the Website user.

2. Defendant's installation and use of data broker software without obtaining consent is a violation of the California Trap and Trace Law.

3. The California Invasion of Privacy Act ("CIPA"), California Penal Code § 630 *et seq.*, imposes civil liability and provides for statutory damages for the installation and use of trap and trace software without a court order. *Id.* §§ 637.2, 638.51; *see Moody v. C2 Educ. Sys. Inc.*, No. 2:24-CV-04249-RGK-SK, 2024 WL 3561367 (C.D. Cal. July 25, 2024) (holding that data broker software was properly alleged to be a trap and trace device because it communicates over the internet and the statutory definition of a trap and trace device expressly covers "wire communication" and "electronic communication," and is not limited to telephone lines).

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the total matter in controversy exceeds $5,000,000 and there are over 100 members of the proposed class. Further, at least one member of the proposed class is a citizen of a State within the United States and at least one defendant is the citizen or subject of a foreign state.

5. Defendant is a Georgia limited liability company that offers data analytics services for healthcare organizations. Defendant discloses and makes available personal information to a California third-parties identifiers, internet

activity, geolocation data, employment information and "inferences" based on these categories for purposes of cross-contextual behavioral advertising.

6. Additionally, Defendant actively markets its products to California businesses and proprietors. It maintains ongoing business relationships with such California customers. Defendant derives substantial revenue from California-based internet interactions through its operation of the Website. Defendant deliberately avails itself of California's commercial privileges by operating its interactive Website infrastructure, which Defendant specifically designed to engage California customers and to disclose their information to various third parties based in California.

7. Further, Defendant specifically intended its surveillance operations to cause injury to California residents. Defendant configured its tracking systems on its Website to identify, profile, and exploit California users.

8. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391 because Defendant (1) is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District; (2) does substantial business within this District; and (3) is subject to personal jurisdiction in this District because it has availed itself of the laws and markets within this District.

**PARTIES**

9. Plaintiff Jane Heiting ("Plaintiff") is, and at all times relevant to this complaint has been, a citizen of California residing and located within the Central District of California. Plaintiff maintains reasonable expectations of privacy when browsing websites. Defendant systematically violated these expectations through its unauthorized surveillance activities.

10. Defendant Trella Health is a Georgia limited liability company that owns, operates, and/or controls www.trellahealth.com (the "Website"). Through

the Website, Trella Health offers data analytics services for healthcare organizations.

11. Plaintiff identifies DOE Defendants 1 through 15 as unknown entities that Defendant directed and controlled to participate in implementing or maintaining Defendant's system. Plaintiff will seek leave to amend this Complaint to identify these entities when Defendant's discovery responses reveal their true names and roles.

12. Each DOE Defendant acted as Defendant's agent or employee in Defendant's implementation of the surveillance scheme described herein. Each DOE Defendant operated within the scope of its relationship with Defendant and participated with Defendant in the common plan to unlawfully track California residents for Defendant's commercial gain.

## FACTUAL ALLEGATIONS

13. Defendant is the proprietor of the Website.

14. Defendant has partnered with California data companies, including 6Sense and LinkedIn in order to deanonymize and develop clandestine user profiles on otherwise anonymous website visitors (the "Data Brokers," and each a "Data Broker"). Defendant has done this by installing tracking beacons from 6Sense and LinkedIn on their website (the "Tracking Beacons").

15. The Tracking Beacons are designed to track and correlate visitors by capturing electronic impulses designed to identify them. This is accomplished through "browser fingerprinting," a process by which Data Brokers are able to ascertain the identity of a website visitor by plotting hundreds of personal identifiers, including a user's geolocation, device information, IP address,[1]

---

[1] An IP address is intended to be used to determine the location of a computer requesting information from a server or website, and not as a means to facilitate de-anonymization website visitors for the purpose of continuous surveillance.

identification and cross-referencing of malicious cookies installed on their devices, and other traits evident from a user's browser.

16. Defendant has in fact partnered with the Data Brokers mentioned herein, by installing Tracking Beacons on the Website in order to deanonymize, identify and target prospective customers, while allowing Data Brokers to access, use, and monetize the data provided by Defendant, in manners that are never shared with users of the Website.

17. Defendant's installation and use of Tracking Beacons from 6Sense and LinkedIn violates the California Trap and Trace law as detailed below.

### 6Sense

18. 6sense helps companies like Defendant to identify anonymous website visitors and their organizations, through the 6SENSE Tracking Beacon. According to 6Sense, the 6SENSE Tracking Beacon "connects the unknown, anonymous prospect to the known, seeing every step and footprint of every potential buyer." As a registered data broker, 6sense, through the 6SENSE Tracking Beacon aggregates data to de-anonymize web traffic and enable targeted advertising and sales outreach as follows:

19. First, the 6SENSE Tracking Beacon deploys JavaScript tags (the "6sense Tag" or "Visitor Recognition" script) on client websites. When a user visits a site, the 6sense tag automatically fires, collecting data about the user's interactions, including page URLs, timestamps, clicks, and browsing behavior.

20. Second, the 6SENSE Tracking Beacon drops cookies (e.g. _gd_visitor, _gd_session) and pixel tags on the user's browser to recognize that user across visits and devices. These cookies persist up to 1 year and store a unique identifier that tracks the visitor's site usage (e.g. number of visits, time spent).

21. Third, the 6SENSE Tracking Beacon stores information gathered from these processes by way of JSON files, and sends the information back to 6Sense.

22. Fourth, the 6SENSE Tracking Beacon "compiles data and correlates that data with external records." In other words, the 6SENSE Tracking Beacon matches the captured information to its extensive off-site database of company and buyer information.

23. The only purpose of the 6SENSE Tracking Beacon is to identify users. 6sense's own documentation confirms that it's software "empowers…100% visibility into their buyers' identities" by linking an anonymous browser to a known company or person.

24. Indeed, 6sense explains that the 6SENSE Tracking Beacon works by "match[ing] anonymous digital intent signals to buyers and accounts." This fits the definition of a "trap and trace device" under Cal. Penal Code § 638.50(c) because the 6sense process captures signaling information (who the visitor is and what they are doing) in order to identify the source or an otherwise anonymous website visit.

### The LinkedIn Tracking Beacon

25. LinkedIn calls its Tracking Beacon the "Insight Tag." According to LinkedIn, the Insight Tag is "[a] simple code snippet added to [a] website [that] can help you optimize your campaigns, retarget your website visitors, and learn more about your audiences." LinkedIn emphasizes that the Insight Tag "enable[s] in-depth campaign reporting" and can "unlock valuable insights about your website visitors."

26. The LinkedIn Insight Tag installed on the Website collects detailed browser fingerprinting data including browser type, version, and configuration settings that create unique device signatures. It captures operating system information including architecture details and version specifications, along with display characteristics such as screen resolution and color depth settings that contribute to device uniqueness.

27. LinkedIn is able to use the identifier to locate, access, and view its members' corresponding LinkedIn profiles, including an individual's first and last name, place of work, contact information, and other personal details.

28. As a result of its activities and operation of the Insight Tag, LinkedIn is able to make personal inferences about individuals' demographics, intent, behavior, engagement, interests, buying decisions, and more

29. By deploying the Insight Tag, Defendant actively facilitates the immediate transmission of identifying information from visitors' devices to LinkedIn's servers, including domains such as px.ads.linkedin.com, www.linkedin.com/px/, and snap.licdn.com (the "LI Servers"). Defendant configured the LinkedIn Insight Tag to automatically route this sensitive data to LinkedIn's surveillance infrastructure in California.

### The Tracking Beacons Are Trap and Trace Devices.

30. CIPA defines a "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50(c).

31. Each of the Tracking Beacons initiates a process to identify the source of electronic communication by capturing electronic impulses sent out from Website users' devices and identifying dialing, routing, addressing, and signaling information about or generated by the users. The users are never informed that the Website is collaborating with the Data Brokers to obtain the users' identifying information.

32. Each of the Tracking Beacons is "reasonably likely" to identify the source of electronic impulses sent from devices visiting the Website. In fact, the Tracking Beacons are designed to meet this objective.

33. Defendant did not obtain a court order before installing or using each of the Tracking Beacons on its Website.

34. Defendant did not obtain the express or implied consent of Plaintiff to be subjected to data sharing with the Tracking Beacons for the purposes of de-anonymization, profiling, and targeting.

**Plaintiff Was Subjected to Trap and Trace Devices on the Website**

35. Plaintiff visited the Website on May 9, 2025. When Plaintiff did so, their identifying information was sent to the Tracking Beacons, by way of electronic impulses.

36. The purpose of this transfer of data from Plaintiff to the Tracking Beacons was for de-anonymization, profiling, targeting and ongoing browsing tracking (as described *supra*). The transfer benefitted Defendant and the Data Brokers financially.

37. The Tracking Beacons took Plaintiff's information and added the information to its profiles of Plaintiff. In turn, on information and belief, Defendant received other relevant data obtained by the Tracking Beacons regarding Plaintiff. Further, the Data Brokers can use the information regarding Plaintiff's visit to the Website to further profile Plaintiff, with the objective of monetizing this data by selling or licensing it to other entities, including law enforcement and government agencies.

38. In this regard, a recent report by the Brennan Center, a public policy nonprofit, has explained that "government agencies may purchase personal data to further their exercise of coercive powers, including the ability to deport, arrest, incarcerate, or even use lethal force."[2] There are recent examples of tech companies exchanging information with the federal government in ways that

---

[2] https://www.brennancenter.org/our-work/research-reports/closing-data-broker-loophole

threaten harm to women's freedom, minority viewpoints and marginalized United States citizens or residents. For example, U.S. Immigration and Customs Enforcement (ICE) has partnered with Palantir Technologies, a Denver-based software company, to use artificial intelligence and data mining to identify, track, and deport suspected noncitizens.[3]  Another example of such government data exchange is the provision by Meta, pursuant to valid warrants, of user data such as Facebook messages, for the purpose of investigating and prosecuting state crimes related to abortion.[4]

39. The prospect of private entities such as the Data Brokers, who are already under public scrutiny for their practices, sharing data they have collected and organized into individualized profiles with government entities has increased significantly in recent years. Columbia and Brown Universities recently agreed to turn over data about applicants and students, such as their race, grades and standardized test scores to the federal government.[5]  During this year, tech companies have complied with unprecedented demands for concessions from the federal executive branch.[6]  Further, the current federal administration has threatened retaliatory action against pharmaceutical companies that refuse to comply with demands to lower drug prices.[7]  No clear legal authority exists preventing the sale or dissemination of user data by Data Brokers to the federal

---

[3] https://www.americanimmigrationcouncil.org/blog/ice-immigrationos-palantir-ai-track-immigrants/.
[4] https://www.nbcnews.com/tech/tech-news/facebook-turned-chat-messages-mother-daughter-now-charged-abortion-rcna42185.
[5] *See, e.g.,* Sharon Otterman & Anemona Hartocollis, "Columbia and Brown to Disclose Admissions and Race Data in Trump Deal," (New York Times Aug. 6, 2025), found at https://www.nytimes.com/2025/08/05/nyregion/columbia-brown-admissions-trump.html.
[6] *See, e.g.,* Rob Wile & Allan Smith, "The CEO in chief: How Trump is getting what he wants from big business," (NBCNews.com Aug. 14, 2025), found at https://www.nbcnews.com/business/business-news/what-trump-involvement-major-corporations-means-us-politics-business-rcna224630.
[7] *See, e.g.,* Anna Bratulic, "In latest Trump salvo, pharma giants face 60-day ultimatum on price cuts," (First Word Pharma, July 31, 2025), found at https://firstwordpharma.com/story/5985417.

CLASS ACTION COMPLAINT
8

government.

40. The only purpose of the Tracking Beacons is to identify users and then track them on the internet.

41. The Tracking Beacons meet the definition of a "trap and trace device" under Cal. Penal Code § 638.50(c) because they process capture signaling information (who the visitor is, and what they are doing) in order to identify the source of an otherwise anonymous website visit – which such visit constitutes an electronic communication.

42. There is no way for Plaintiff to learn what the Data Brokers did with Plaintiff's data, including what inferences the Data Brokers have gleaned from it, or when, why and to whom the Data Brokers have sold or licensed Plaintiff's data. As such, Plaintiff has been injured by Defendant's surveillance practices.

43. Plaintiff was never informed of, and therefore could not have consented to, data collection by the Data Brokers for mercantile purposes. Plaintiff has no way to know the scope of the injury suffered because the Tracking Beacons operate in secret and without public disclosure of their operations.

## CLASS ALLEGATIONS

44. Plaintiff brings this action individually and on behalf of all others similarly situation (the "Class") defined as follows:

**All persons within California whose identifying information was sent to 6Sense and LinkedIn as a result of visiting the Website within the limitations period.**

45. NUMEROSITY: Plaintiff does not know the number of Class Members but believes the number to be in the thousands, if not more. The exact identities of Class Members may be ascertained by the records maintained by Defendant.

46. COMMONALITY: Common questions of fact and law exist as to all Class Members and predominate over any questions affecting only individual

members of the Class.  Such common legal and factual questions, which do not vary between Class members, and which may be determined without reference to the individual circumstances of any Class Member, include but are not limited to the following:

    a. Whether the Tracking Beacons are trap and trace processes as defined by California law;

    b. Whether Plaintiff and Class Members are entitled to statutory damages;

    c. Whether Class Members are entitled to injunctive relief; and

    d. Whether Class Members are entitled to disgorgement of unlawfully obtained data.

47. TYPICALITY: As a person who visited Defendant's Website and whose personal information was fingerprinted and de-anonymized by the Data Brokers, Plaintiff is asserting claims that are typical of the Class.

48. ADEQUACY: Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained attorneys experienced in the class action litigation.  All individuals with interests that are actually or potentially adverse to or in conflict with the class or whose inclusion would otherwise be improper are excluded.

49. SUPERIORITY: A class action is superior to other available methods of adjudication because individual litigation of the claims of each Class Member is impracticable and inefficient.  Even if every Class Member could afford individual litigation, the court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed and address identical issues.

## FIRST CAUSE OF ACTION

### Violations of California Trap and Trace Law

### Cal. Penal Code § 638.51 (the "California Trap and Trace Law")

50. Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

51. The California Trap and Trace Law provides that "a person may not install or use…a trap and trace device without first obtaining a court order…." Cal. Penal Code § 638.51(a).

52. A "trap and trace device" is defined as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." *Id.* § 638.50(c).

53. The Tracking Beacons, as deployed on the Website, constitute a trap and trace device under Cal. Penal Code § 638.50(c). The Tracking Beacons are designed to identify the source of the electronic and wire communications sent from the devices of users in California visiting the Website in violation of the California Trap and Trace Law.

54. Defendant did not obtain a court order before using or installing the Tracking Beacons on the Website. Defendant also did not obtain consent from Plaintiff or any of the Class Members before using trap and trace technology, including the Tracking Beacons, to identify visitors to its Website.

55. Defendant is statutorily ineligible to assert consent as a defense to its illegal use of a Trap and Trace device. Under Penal Code § 638.51(b), a consent defense is only available to a "provider of electronic or wire communication service," which Defendant is not.

56. CIPA imposes civil liability including statutory damages for violations of the California Trap and Trace Law. Cal. Penal Code § 637.2; *see also C2 Educ. Sys. Inc.*, 2024 WL 3561367.

## **PRAYER**

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1. An order certifying the Class, naming Plaintiff as the representative of the Class and Plaintiff's attorneys as Class Counsel;

2. An order that data unlawfully obtained by Defendant's deployment of a trap and trace device be disgorged;

3. An order enjoining Defendant's conduct as alleged herein and any other injunctive relief that the Court finds proper;

4. Statutory damages pursuant to CIPA;

5. Reasonable attorneys' fees and costs; and

6. All other relief that would be just and proper as a matter of law or equity, as determined by the Court.

DATED: January 22, 2026                           TAULER SMITH LLP


By:  */s/ Robert Tauler*
     Robert Tauler, Esq.
     *Attorneys for Plaintiff*
     *Jane Heiting*

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

DATED: January 22, 2026                           TAULER SMITH LLP


By:   /s/ Robert Tauler
      Robert Tauler, Esq.
      *Attorneys for Plaintiff*
      *Jane Heiting*